# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

FRANCISCO CORONEL MEJIA,

      Petitioner,

vs.

BRIAN D. GARDNER, et al.,

      Respondent.

No. C26-64-LTS-MAR

**MEMORANDUM
OPINION AND ORDER**

## *I.    INTRODUCTION*

This case is before me on petitioner Francisco Coronel Mejia's petition (Doc. 1) for a writ of habeas corpus under 28 U.S.C. § 2241 and motion (Doc. 2) for a show cause order and preliminary injunction. Coronel Mejia is an alien being held in custody without a bond hearing as his removal proceedings are ongoing. *See* Doc. 1. Coronel Mejia claims his detention violates his procedural and substantive due process rights. In an initial review order (Doc. 4), I directed Respondents (collectively, the Government)[1] to respond to the petition, which it has (Doc. 8). Coronel Mejia then filed a reply (Doc. 14). Because the Government's response failed to address the substantive due process issue, I ordered supplemental briefing, which has now been submitted (Docs. 17, 20). Oral argument is not necessary. *See* LR 7(c).

## *II.    BACKGROUND*

Coronel Mejia is a Mexican national who claims that his parents brought him into the United States in March 2004, at the age of two, and that he has continuously resided

---

[1] Although the Government's reply was filed on behalf of only the federal respondents, and not the state employees (Doc. 8 at 1 n.1), this order will apply to all respondents with equal force.

in the United States since.  Doc. 1 at 4.  His parents avoided inspection when they entered, meaning Coronel Mejia was never admitted or paroled into the country.  Doc. 11-1 at ¶ 13.  He states that in the 22 years since entering the United States, he has integrated himself in his community,[2] has a fiancée with a baby on the way and has no criminal record.  Doc. 1-3, at 3.  A record check when he was detained revealed that he has had a pending application for Deferred Action for Childhood Arrivals (DACA) since 2021.  *Id.* at 4.

On January 31, 2026, Coronel Mejia was driving home from work when he was stopped for an alleged equipment violation.  During the traffic stop, it was revealed that Coronel Mejia did not have a valid driver's license, prompting his arrest.  Doc. 1 at ¶ 36.  He was released into ICE custody and has since been held in the Linn County Jail.  *Id.* at ¶ 37.  Coronel Mejia requested a bond redetermination hearing but was denied after an Immigration Judge concluded she did not have jurisdiction to issue a bond.  Doc. 1-5.

### III.    STANDARD OF REVIEW

Habeas corpus relief is available to those "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  For relief, a petitioner must prove by a preponderance of the evidence that his detention is unlawful.  *Phongsavanh v. Williams*, 809 F. Supp. 3d 864, 867 (S.D. Iowa 2025).

### IV.    ANALYSIS

Coronel Mejia concedes that *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026), applies to his case, meaning he is being detained under the mandatory detention scheme of 8 U.S.C. § 1225(b)(2).  *See* Doc. 14 at 1 & n.1.  While § 1225(b)(2) provides no statutory right to a bond hearing, *see Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018),

---

[2] Coronel Mejia has submitted 15 letters of support from community members.  *See* Doc. 1-4.

*Avila* does not foreclose a petitioner from challenging his or her detention on due process grounds. *Avila*, 170 F.4th at 1140 & n.8 (Erickson, J., dissenting).

When an alien faces removal proceedings, the Government must provide the alien with due process of law. *Yamataya v. Fisher* (the Japanese Immigration Case), 189 U.S. 86, 100–01 (1903).[3] There are two components to due process: a procedural right and a substantive right. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998). The procedural aspect asks only whether the process provided to an individual was constitutionally adequate. *Mo. Roundtable for Life v. Carnahan*, 676 F.3d 665, 677 (8th Cir. 2012). The substantive aspect looks beyond the process to test whether the Government had a compelling reason to deprive the individual of a fundamental right. *Reno v. Flores*, 507 U.S. 292, 303 (1993). Coronel Mejia claims a violation of both.

## A. *Procedural Due Process for Those Detained Under § 1225(b)(2)*

Coronel Mejia asserts that he is due an individualized bond hearing before the Government can detain him through the pendency of his removal proceedings. The framework for evaluating his demand is in dispute. Coronel Mejia advocates applying the *Mathews*[4] factors, under which the court must balance "the interest at stake for the individual, the risk of erroneous deprivation of the interest through the procedures used as well as the probable value of additional or different procedural safeguards, and the

---

[3] To the extent the Government suggests that an alien has no more due process rights beyond what is statutorily provided, it overreads cases such as *DHS v. Thuraissigiam*, 591 U.S. 103, 140 (2020) and strips the precedent of meaningful context. Although the political branches enjoy nearly plenary authority to set the procedures for "determining whether an alien should be admitted" when "at the threshold of initial entry," *id.* at 107, 139, it has long been recognized that those who have crossed that threshold have greater constitutional protections. *See Zadvydas v. Davis*, 533 U.S. 678, 693–94 (collecting cases). I therefore reject what would be the Government's widest-reaching contention, which is that all aliens detained under § 1225(b)(2) can claim only those due process protections that have been statutorily provided. For reasons I will discuss further, *infra*, Coronel Mejia has greater due process protections than his counterparts who are initially arriving in the United States.

[4] *Mathews v. Eldridge*, 424 U.S. 319 (1976).

interest of the government in using the current procedures rather than additional or different procedures." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (citing *Mathews*, 424 U.S. at 334–35). The Government counters that binding precedent forecloses any interest-balancing for aliens detained pending their removal proceedings. Relying on *Banyee v. Garland*, 115 F.4th 928 (8th Cir. 2024), and *Demore v. Kim*, 538 U.S. 510 (2003), it argues that, barring dilatory tactics, an alien's indiscriminate detention while removal proceedings are ongoing poses no procedural due process problem. Doc. 9 at 6.

*Demore* and *Banyee* hold that it is constitutionally permissible to detain criminal aliens without a bond hearing under § 1226(c) while their removal proceedings remain ongoing. As both cases recognized, the political branches have wide latitude in restricting some subclasses of aliens undergoing removal proceedings from receiving an individualized bond hearing. *See, e.g.*, *Flores*, 507 U.S. 292 (unaccompanied minors); *Carlson v. Landon*, 342 U.S. 524 (1952) (communists). After all, "Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Mathews v. Diaz*, 426 U.S. 67, 80 (1976).

The Government seeks to expand the foregoing logic to all aliens who unlawfully entered the United States. *See* 8 U.S.C. § 1225(a)(1) (defining an "applicant for admission" as all aliens who unlawfully entered the country); *Avila*, 170 F.4th at 1134 (all applicants for admission are properly detained under § 1225(b)(2), which does not confer a statutory right to a bond proceeding). The broad language in *Demore* and *Banyee* seemingly support its objective. *See Demore*, 538 U.S. at 523 ("[T]his Court has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process."); *Banyee*, 115 F.4th at 931 ("The rule has been clear for decades: detention during deportation proceedings is constitutionally valid." (cleaned up)); *Banyee*, 115 F.4th at 933 ("[*Zadvydas*] and [*Demore*] leave no room for a multi-factor 'reasonableness' test.").

4

Coronel Mejia seeks to limit *Demore* and *Banyee* to aliens who have been convicted of aggravated felonies and subject to detention under 8 U.S.C. § 1226(c). Under that provision, he contends, Congress made sufficient findings of dangerousness and flight risk as to the class that obviated the need for individualized bond hearings. Doc. 14 at 10. By contrast, he argues that in the § 1225(b)(2) context, no similar congressional findings support detaining every alien without a bond hearing. As such, Coronel Mejia contends that it falls back on the courts to conduct the necessary balancing under *Mathews*.

Although *Demore* and *Banyee* applied to a different class of aliens that more obviously posed risks if released, I cannot find the distinction is dispositive. *Mathews* was never intended as "an all-embracing test for deciding due process claims." *Dusenbery v. United States*, 534 U.S. 161, 168 (2002). In the immigration-detention context, it is not always employed for determining the process due to each person. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1214 (9th Cir. 2022) (Bumatay, J., concurring) (citing *Demore*, 538 U.S. at 521–31; *Flores*, 507 U.S. at 299–315)); *but see Landon*, 459 U.S. at 35 (applying the *Mathews* test for determining whether a returning resident-alien was entitled to a deportation hearing). Instead, the Supreme Court recognizes a spectrum of protections to aliens "depending upon status and circumstance," *Zadvydas*, 533 U.S. at 694 (citing *Landon*, 459 U.S. at 32–34), with status and circumstance being generalized to a class of aliens for which a bright-line rule is imposed. *See Banyee*, 115 F.4th at 933. Adopting such a framework here, I will consider the status and circumstances for the class of aliens to which Coronel Mejia belongs.[5] Under

---

[5] Some courts disagree, including courts in Iowa's federal districts. *Compare Muse v. Mullin*, No. 26-cv-4024, 2026 WL 1008532, at *4 (N.D. Iowa Apr. 14, 2026) (applying the *Mathews* factors), *and Abbas v. Schneider*, No. 26-cv-132, 2026 WL 1079292, at *7 (S.D. Iowa Apr. 17, 2026) (same), *with Romero v. Brown*, ___ F. Supp. 3d ___, 2026 WL 1021455, *5 (S.D. Iowa Apr. 15, 2026) (adopting a bright-line rule). The proper framework for evaluating Coronel Mejia's claim is not well-settled. If *Mathews* should be applied, I would find that Coronel Mejia's individual circumstances warrant a bond hearing.

this analysis, I can find no constitutional right to a bond hearing for those like Coronel Mejia, who have previously affected entry and have remained in the United States for a significant period of time.

No doubt, this group has some procedural protections having gained a foothold in the United States.  Still, the political branches' powers remains potent.  Within their prerogative is the ability to mandate detention for those aliens yet to be inspected and admitted into the country.  Even though many of those aliens—Coronel Mejia included—have lived in the United States for decades without incident, Congress still has reason to detain them without a pressing need to check and verify their background.  Past precedent has approved such non-individualized civil detentions for aliens "pending the inquiry into their true character, and while arrangements were being made for their deportation." *Wong Wing v. United States*, 163 U.S. 228, 235 (1896); *accord Jennings*, 583 U.S. at 286 ("Congress has authorized immigration officials to detain some classes of aliens during . . . certain immigration proceedings.  Detention during those proceedings gives immigration officials time to determine an alien's status without running the risk of the alien's either absconding or engaging in criminal activity before a final decision can be made.").  Thus, even with a right to some process, an individualized bond hearing is not included.  Rather, the constitutional floor is the removal proceeding itself, *see Wong Yang Sung v. McGrath*, 339 U.S. 33, 49–50 (1950) (recognizing a constitutional need for a deportation hearing "at least for aliens who had not entered clandestinely and who had been here some time even if illegally"), *superseded by statute on other grounds as recognized in*, *Ardestani v. I.N.S.*, 502 U.S. 129, 133 (1991), which Congress supplies. *See* 8 U.S.C. § 1225(b)(2)(A) (providing for removal proceedings under § 1229a).  Otherwise, Congress provided Coronel Mejia his procedural process when it passed § 1225(b)(2), providing for his mandatory detention.  *See Gattis v. Gravett*, 806 F.2d 778, 781 (8th Cir. 1986); *Ibarra Sanchez v. Bondi*, No. 26-cv-63, 2026 WL 883680, at *2 (D.N.D. Mar. 31, 2026) ("[B]eing detained pursuant to a constitutionally legitimate statute promulgated by Congress is not a due process violation.").

## B. Substantive Due Process

Substantive due process guarantees certain fundamental rights unless and until the Government provides a sufficiently compelling state interest to outweigh those rights. Traditionally, that requires the Government to show that its infringement is "narrowly tailored to serve a compelling state interest." *Flores*, 507 U.S. at 302. However, "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Demore*, 538 U.S. at 528; *accord Dep't of State v. Muñoz*, 602 U.S. 899, 911 (2024) ("[I]t would be remarkable to put the Government to the most demanding test in constitutional law in the field of immigration, an area unsuited to rigorous judicial oversight."). Fundamental rights are ones that are "deeply rooted in [our] history and tradition" and are "essential to our Nation's 'scheme of ordered liberty.'" *Dobbs v. Jackon Women's Health Org.*, 597 U.S. 215, 237–38 (2022) (alteration in original) (quoting *Timbs v. Indiana*, 586 U.S. 146, 154 (2019)). Courts must be precise in defining such rights and mindful to avoid "confus[ing] what [due process] protects with our own ardent views about . . . liberty." *Id.* at 239.

Coronel Mejia identifies a fundamental right to be free from civil detention without special justification. Doc. 1 at 8. This right, he claims, mandates he receive an individualized hearing before the Government can detain him pending removal proceedings. That Coronel Mejia claims a substantive right to the same procedures I found were not constitutionally mandated in his procedural due process challenge itself suggests some skepticism is in order. But to the extent that Coronel Mejia raises an argument that is distinguishable from his procedural due process one, it still fails. At its core, what Coronel Mejia seeks is a right to be released into the country without having been lawfully admitted, and while removal proceedings remain pending. There is no such deeply rooted right.

Of course, Coronel Mejia's detention may graduate to a due process violation in the future, as he cannot be held in custody indefinitely. Thus, should the Government

7

needlessly protract Coronel Mejia's detention, at some point his civil confinement may no longer serve its regulatory purposes and his challenges would gain additional dimensions. At this time, however, Coronel Mejia's detention is constitutionally permissible.

## V. CONCLUSION

For the reasons set forth herein, Francisco Coronel Mejia's petition (Doc. 1) for habeas corpus relief and motion (Doc. 2) for interim relief are both **denied**.

**IT IS SO ORDERED** this 2nd day of June, 2026.

_____
Leonard T. Strand
United States District Judge